IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTONIO GEATTI, | : | CIVIL ACTION NO. **3:CV-12-0032** |
| | : | |
| Plaintiff | : | |
| | : | (Judge Mannion) |
| v. | : | |
| | : | (Magistrate Judge Blewitt) |
| MINSEC COMPANIES, | : | |
| | : | |
| Defendant | : | |

## **REPORT AND RECOMMENDATION**

### I.    **Background.**

On January 6, 2012, Plaintiff, Antonio Geatti, a former employee of Defendant MinSec Companies, LLC ("MinSec"), filed, through counsel, a Complaint alleging the following claims: Count I, Termination from Employment in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* (requires employers to allow an employee to take unpaid leave to care for his serious health condition and prohibits retaliation by employer for doing so); Count II, Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*; Count III,   Race Discrimination  in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.*; and Count IV, Retaliatory Firing for Opposing Discrimination under Title VII; and Count V, Disability Discrimination in violation of the  the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*   Plaintiff paid the filing fee. Plaintiff basically alleges that he was an employee of Defendant MinSec Companies from 2003 through October 19, 2010, and that Defendant wrongfully terminated in violation of the FMLA, ADEA, and the ADA.  Plaintiff also alleges that Defendant discriminated against him based on his race in violation of Title VII and that Defendant

retaliated against him due to his opposing discrimination by Defendant in an EEOC Charge.

Defendant was served and filed its Answer to Plaintiff's Complaint, with Affirmative Defenses, on March 6, 2012. (Doc. 5).

The Court the issued a Scheduling Order with case deadlines. (Doc. 12). Mediation was ordered and it was conducted on May 17, 2010. Subsequently, counsel for Plaintiff filed a motion to withdraw as counsel, and Defendant did not oppose it. The Court allowed Plaintiff 's counsel to withdrawn on May 18, 2012. (Doc. 14). Thus, Plaintiff has been proceeding pro se since May 18, 2012.

On July 18, 2012, this case assigned to the undersigned for pre-trial matters.

On September 27, 2012, Defendant filed a Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56. **(Doc. 15).** On September 28, 2012, Defendant filed its brief in support of its Motion for Summary Judgment and its Statement of Material Facts ("SMF") with attached Exhibits. (Docs. 16 & 17). Defendant's SMF paragraphs 1-11 are proper SMF, are relevant and, they are supported by citation to the record as required by Local Rule 56.1, M.D. Pa. Defendant's SMF paragraphs 12 and 13 are not relevant as discussed below. Also Defendant's paragraphs 15-18 are legal conclusions and not proper SMF. However, we take judicial notice that the Court's Scheduling Order was not modified and that Plaintiff did not produce any expert reports as evidence. On November 13, 2012, after an extension of time, Plaintiff filed his Answer to Defendant's 18-paragraph SMF along with seven sentences of additional facts and legal conclusions. (Doc. 19). Neither Plaintiff's responses denying Defendant's SMF (except for ¶ 5) nor his seven sentences of additional facts and legal conclusions contain any cites to the record for support as

2

required by Local Rule 56.1, M.D. Pa. Also, on November 13, 2012, Plaintiff filed his opposition brief to Defendant's Summary Judgment Motion and, a Motion to Dismiss and Deny Defendant's Summary Judgment Motion.[1] (Docs. 20 & 22). Plaintiff did not submit any evidence.

On February 28, 2013, counsel for Defendant sent a letter, with attachments, to the Court indicating that Plaintiff recently filed another action against Defendant in the U.S. District Court for the Eastern District of Pennsylvania, Civil No. 5: 12-cv-3696, E.D. Pa. Counsel for Defendant states that he and Plaintiff's former counsel agreed that both of Plaintiff's EEOC Charges, Nos. 530-2011-02303 and 530-2011-01748, would be adjudicated in the present case. Counsel for Defendant attached a copy of a 3/13/12 e-mail for Plaintiff 's former counsel in which it was agreed that both of Plaintiff's EEOC Charges would be addressed in the present case. The letter from counsel for Defendant was not docketed and we directed the Clerk of Court to docket it. (Doc. 24 ???). Defendant's counsel also attached a copy of his March 14, 2012 letter to the EEOC indicating that Plaintiff filed an action in federal court after the EEOC issued a right to sue letter regarding his EEOC Charge, No. 530-2011-02303, and stating that Plaintiff's second EEOC Charge No. 530-2011-01748 contained duplicative claims and that both parties were requesting the EEOC to dismiss Plaintiff's EEOC Charge No. 530-2011-01748. Paragraph 13 of Defendant's SMF also states its counsel and Plaintiff's former counsel agreed that Plaintiff's EEOC Charges Nos. 530-2011-02303 and 530-2011-01748 were duplicative and that Plaintiff 's latter EEOC Charge should be dismissed.

---

[1]Plaintiff's Doc. 20 filing does not contain an Affidavit of Plaintiff even though Plaintiff styles this document as both an Affidavit and his opposition brief.

Plaintiff responded to the letter from counsel for Defendant stating that only his EEOC Charge No. 530-2011-02303 was being litigated in the present case and not his EEOC Charge No. 530-2011-01748. (Doc. 23). Plaintiff disagreed with counsel for Defendant's representation that both EEOC Charges contained duplicative claims. Plaintiff also stated that counsel for Defendant was "trying to introduce confusion by trying to claim other EEOC cases in this civil action." Plaintiff further stated that disciplinary action against his former attorneys would be appropriate since they "act[ed] under false pretenses and introduce[d] misleading and or fraudulent data and documentation." The record shows that the EEOC terminated the process regarding Plaintiff's EEOC Charge No. 530-2011-02303 and issued a Notice of Right to Sue Letter on October 26, 2011. (Doc. 17, p. 54). The record also shows that the EEOC determined that the information provided did not establish a violation of the federal statutes (ADA, ADEA and Title VII) regarding Plaintiff's EEOC Charge No. 530-2011-01748 and issued a Dismissal and Notice of Suit Rights on September 4, 2012, well after Plaintiff filed his Complaint in the present case. (Doc. 17, p. 56). Plaintiff was advised in the EEOC's September 4, 2012 Dismissal and Notice of Suit Rights that he had 90 days to file an action in federal court.

Thus, we only consider Plaintiff's claims raised in his EEOC Charge No. 530-2011-02303 since only these claims are properly before this Court. Plaintiff's claims in his EEOC Charge No. 530-2011-01748 were not exhausted at the time he filed the instant action. A Plaintiff asserting an employment discrimination claims under Title VII, the ADA and the ADEA is required to exhaust all administrative remedies before filing an action in federal court. 42 U.S.C. § 2000e–5(e); *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir.1996); *DeLa Cruz v. Piccari Press*, 521 F.Supp.2d 424, 431

(E.D.Pa. 2007). In order to exhaust administrative remedies, Plaintiff must "file a timely discrimination charge with the EEOC." *DeLa Cruz,* 521 F.Supp.2d at 431 (citing *Waiters v. Parsons,* 729 F.2d 233, 237 (3d Cir.1984)).   Under Title VII, Plaintiff must file his or her charge of employment discrimination with the   EEOC within 180 days of the last claimed act of discrimination. 42 U.S.C. § 20002-5(e)(1); *Oshiver v. Levin,* 38 F.3d 1380, 1385 (3d Cir.1994). After Plaintiff files a discrimination charge with the EEOC, the EEOC will investigate the charge.  Plaintiff must then wait until the EEOC issues a right-to-sue letter before he or she can file  an action in federal court. *Burgh v. Borough Council,* 251 F.3d 465, 470 (3d Cir.2001).  Once the EEOC issues a decision regarding a discrimination complaint, a party is required to file a civil action in federal court within 90 days of the EEOC decision.  *McIntyre v. City of Wilmington*, 360 Fed. Appx. 355, 357 n. 3 (3d Cir. 2010).

To the extent Defendant maintains that Plaintiff's EEOC Charge No. 530-2011-01748 and his federal action filed in the  U.S. District Court for the Eastern District of Pennsylvania raise the same claims that Plaintiff raised in his EEOC Charge No. 530-2011-02303 and raised in his present case, Defendant can certainly present this argument to the  U.S. District Court for the Eastern District of Pennsylvania.

Defendant's Motion for Summary Judgment is now ripe for disposition.

This Court has jurisdiction over this action with respect to Plaintiff's federal claims, *i.e.* his FMLA, ADEA, Title VII and ADA claims,  pursuant to 28 U.S.C. § 1331.  *See Page v. Trustees of Univ. of Pennsylvania*, 222 Fed. Appx. 144, 145, n. 1 (3d Cir. 2007); *Burlington v. News Corp.*, 759 F.Supp. 2d 580 (E.D. Pa. 2010); *Slater v. Susquehanna Co.*, 613 F. Supp. 2d 653, 657 (M.D. Pa.

2009);*Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 761 (3d Cir. 2004)(Federal Court has jurisdiction over Plaintiff's ADA action under 28 U.S.C. §1331.).

## II.     Summary Judgment Standard.

A motion for summary judgment may not be granted unless the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56.  The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact.  Fed.R.Civ.P. 56(c).  An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  A fact is "material" if proof of its existence or non-existence could affect the outcome of the action pursuant to the governing law.  *Anderson*,  477 U.S. at 248.  "Facts that could alter the outcome are material facts." *Charlton v. Aramus Bd. of Educ.*, 25 F. 3d 194, 197 (3d Cir.), *cert. denied*, 513 U.S. 1022 (1994).

The burden of proving that there is no genuine issue of material fact is initially upon the movant. *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.* 725 F.2d 667 (3d Cir. 1983).  Upon such a showing, the burden shifts to the nonmoving party. *Id.* The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Company*, 862

F.2d 56, 59 (3d Cir. 1988). In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id.*, quoting *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied*, 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976) *cert. denied*, 429 U.S. 1038 (1977).

Under Rule 56 summary judgment must be entered where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Moreover, the Third Circuit has indicated that "although the party opposing summary judgment is entitled to 'the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact,' and 'cannot rest solely on assertions made in the pleadings, legal memorandum or oral argument.'" *Goode v. Nash*, 2007 WL 2068365 (3d Cir. 2007)(Non-Precedential)(citation omitted).

Thus, "summary judgment is proper, when, viewing the evidence in the light most favorable to the non-movant, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. General Motors*, 2009 WL 237247, *2 (3d Cir.)(citation omitted); *Page v. Trustees of Univ. of Pennsylvania*, 222 Fed. Appx. 144 at 145 (3d Cir. 2007) (the court must "view the facts in the light most favorable to the party opposing the [summary judgment] motion when making [its] determination."); *Burlington v. News Corp.*, 759 F.Supp. 2d at 589-90.

## III.    Material Facts.

As mentioned, Defendant properly submitted its SMF (Doc. 17) with its Summary Judgment Motion, and Plaintiff has responded to it (Doc. 19).   However, as stated, Plaintiff failed to cite to the record as required with respect to all of Defendant's SMF which he denied, except for ¶ 5. Plaintiff did not respond to ¶'s 1, 14 and 15 of Defendant's SMF, and he admits ¶ 11 of Defendant's SMF regarding the EEOC's Right to Sue letter issued to Plaintiff on October 27, 2011, with respect to Plaintiff 's EEOC Charge No. 530-2011-02303.   As stated, we find that paragraphs 1-11 of Defendant's SMF are proper material facts and are relevant to this case.[2]   Therefore, we find that paragraphs 1-11 of Defendant's SMF and the material facts stated therein are undisputed since they are supported by citation to the record and since Plaintiff has not cited to any evidence to controvert them.

Thus, Plaintiff failed to cite to the record to support his paragraph-by-paragraph responses denying paragraphs 2-10 of Defendants' SMF as he was required to do  under Local Rule 56.1. Plaintiff also  failed to cite to the record to support his additional statements, numbers 1-7, at the end of his response to  Defendant's SMF.  Regardless, paragraphs 2-10 of Defendant's SMF (Doc. 17) are supported by the record attached to its SMF.   Thus, we find that paragraphs 2-10 of Defendant's SMF are undisputed.[3]   *See Cyrus v. Laino*, Civil No. 08-1085, M.D. Pa.; *Cyrus v.*

---

[2]"Material facts" are those which might affect the outcome of the suit.  *Justofin v. Metropolitan Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004).

[3]Insofar as Plaintiff has denied as "not true" paragraphs 2-10 of Defendant's SMF, he has failed to point to evidence in the record to support any of his denials of Defendant's SMF.  Also, Defendant's paragraphs 2-10 are all supported by its evidence and accepted as undisputed.
In the case of *Barthalow v. David H. Martin Excavating, Inc.*, 2007 WL 2207897, * 1, n.

*Freynik*, Civil No. 08-2278, M.D. Pa.; *Michtavi v. Martinez*, 2009 WL 5172962 (M.D. Pa.); *Hemingway v. Ellers, 2008 WL 3540526 (M.D. Pa.); Accolla v. U.S.*, 2009 WL 3625383 (M.D. Pa.), affirmed 2010 WL 763550 (3d Cir.)(court found that since Plaintiff inmate in civil rights action did not properly respond to prison staff Defendants' statement of facts as required by L.R. 56.1, M.D. Pa., Defendants' statement of facts were undisputed). Despite Plaintiff's failure to properly respond to Defendants' statement of facts, we accept Defendants' statement of facts since they are all supported by their undisputed evidence. Moreover, we will consider Plaintiff's additional SMF to the extent they are relevant to the claims in this case and are supported by any evidence submitted. (Doc. 19, p. 3, ¶ 1-7).[4]

---

5, (M.D. Pa. 2007), this Court noted:

> The Middle District of Pennsylvania's Local Rule of Court 56.1 provides that a summary judgment motion must include a separate concise statement of material facts. M.D. Pa. Local R. 56.1. The rule also requires that an opposition to a summary judgment motion must similarly include a statement that "responds to the numbered paragraphs set forth in [the moving party's concise statement of material facts], as to which it is contended that there exists a genuine issue to be tried." *Id.* Moreover, "[a]ll material facts set forth in [the moving party's statement] will be deemed to be admitted unless controverted by the [opposing party's statement]. " *Id.*

*See also Dusenbery v. U.S.*, 2006 WL 218220, * 1 (M.D.Pa. 2006) ("it appearing that defendants' statement of material facts was properly deemed admitted by plaintiff *see* L.R. 56.1 providing that the moving party's statement of material facts will be deemed admitted unless the non-moving party specifically contradicts the statement").

[4]We shall not, however, recommend that the Court grant Defendant's Summary Judgment Motion based on the Defendant's undisputed SMF alone. As stated, we shall also consider Defendant's evidence to the extent it is relevant to the claims in this case, notwithstanding Plaintiff's failure to abide by this Court's Local Rule.

Defendants' undisputed SMF are as follows:[5]

1. Defendant MinSec "is a business entity organized under the laws of the Commonwealth of Pennsylvania" and MinSec "operates a community correctional facility at 145 West Street Hazelton, Luzerne County, Pennsylvania.

2. Plaintiff began working at MinSec on September 3, 2003 as a Security Monitor and "was terminated on October 19, 2010."

3. During his employment with MinSec, the Plaintiff was repeatedly cited for violating MinSec's workplace policies and procedures.[6]

4. By the time that Plaintiff was officially terminated from his employment with MinSec on October 19, 2010, he had received **multiple** corrective action notices, as well as unsatisfactory performance reviews. [emphasis original]

5. On September 17, 2010, Plaintiff was suspended without pay for: (i) improper use of official reporting documentation; and (ii) improper use of MinSec's equipment for personal use. [Doc. 17, p. 21]

6. Despite this suspension, Plaintiff was retained pursuant to the terms of a "last chance agreement" that was reached between Plaintiff and MinSec on or about October 9, 2010. [Doc. 17, p. 23]

7. Among other things, the "last chance agreement" provided that in the event [Plaintiff] was to commit any further violation of MinSec's policies and procedures, "his employment would be immediately terminated." [Doc. 17, p. 23]

8. On October 19, 2010, Plaintiff was terminated from MinSec for "failure to secure facility keys." [Doc. 17, p. 25]

9. No other factor played any role in MinSec's decision to terminate the Plaintiff.

--------------------

[5]We shall not repeat the cites to Defendant's evidence which are stated in its SMF and is attached to its SMF. (Doc. 17, pp. 1-4 & pp. 6-59). We have added in brackets some specific cites to Defendant's evidence which we found supported its SMF.

[6]Some of the incidents in which Plaintiff violated Defendant's policies and procedures for Security Monitors included, repeatedly showing up late for work, failing to maintain the security of the inmates at Defendant's treatment center, and sleeping on the job. (Doc. 17, p. 8, ¶ 5).

10. At no time after Plaintiff was notified of his termination for violation of the last chance agreement did MinSec receive any appeal of the decision to terminate Plaintiff. [Doc. 17, p. 9]

11. On October 2[6], 2011[,] the EEOC issued a right to sue letter to Plaintiff [EEOC Charge] (No. 530-2011-02303). [Doc. 17, p. 54]

(Doc. 17, ¶'s 1-11).[7]

## IV. Discussion.

As stated, Plaintiff's Complaint raises the following claims: Count I, Termination from Employment in violation of the FMLA; Count II, ADEA claim; Count III, Race Discrimination in violation of Title VII; Count IV, Retaliatory Firing for Opposing Discrimination under Title VII; and Count V, disability discrimination in violation of the the ADA. Plaintiff essentially alleges that he was terminated from his Security Monitor position with Defendant on October 19, 2010, due to age discrimination, race discrimination (Plaintiff states that he is Hispanic which was an overwhelming minority at Defendant's facility where he worked, Doc. 19, p. 3) and disability discrimination, and that he was retaliated against by Defendant for taking leave for a serious health condition and for opposing discrimination *via* a 2009 EEOC Charge.

Also, as discussed above, we find that Plaintiff has exhausted his administrative remedies with respect to his age discrimination, race discrimination, disability discrimination, and retaliation claims raised against Defendant in his EEOC Charge No. 530-2011-02303. Further, as indicated, a Plaintiff asserting employment discrimination claims under Title VII, the ADA and the ADEA is required to exhaust all administrative remedies before filing an action in

[7]All of Defendants' evidence referenced in its SMF is attached to Doc. 17. As stated, we find that all of Defendant's above stated SMF are properly supported by its evidence.

federal court. *See Antol v. Perry,* 82 F.3d at 1295; *DeLa Cruz v. Piccari Press,* 521 F.Supp.2d at 431.

With respect to Plaintiff's Title VII race discrimination claim pertaining to his termination from his employment with Defendant as a Security Monitor, the Court in *Page v. Trustees of Univ. of Pennsylvania,* 222 Fed. Appx. at 145, stated:

> To establish a prima facie case of Title VII [sex or race] discrimination, [Plaintiff] must show (1) that she belongs to a protected class, (2) that she suffered an adverse employment action (3) under circumstances leading to an inference of unlawful discrimination. *See Jones v. Sch. Dist. of Philadelphia,* 198 F.3d 403, 410 (3d Cir.1999).

*See also Burlington v. News Corp.,* 759 F.Supp. 2d at 592(citations omitted). Section 2000e-2(m) of Title VII (42 U.S.C.) provides, in pertinent part, that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."

Thus, Title VII "by its terms outlaws treating employees of one race differently from another race." *Burlington,* 759 F.Supp.2d at 596. The Court in *Burlington v. News Corp.,* 759 F.Supp. 2d at 592-593, also stated:

> Although showing that similarly situated coworkers were treated more favorably than the plaintiff is one method of satisfying the final element of a prima facie case of discrimination, it is not the only one. The Third Circuit has explained that although some circuits have required plaintiffs to make such a showing in discrimination cases, "that is not the current law in this or the majority of the circuits." *Sarullo,* 352 F.3d at 798 n. 7 (citations omitted). Indeed, the Third Circuit has counseled in *Sarullo* and elsewhere that the prima facie case is intended to be a flexible standard. *See id.* at 797–98 ("[T]he prima facie test remains flexible and must be tailored to fit the specific context in which it is applied." (citing *Geraci v. Moody–Tottrup, Int'l, Inc.,* 82 F.3d 578, 581 (3d

Cir.1996))); *see also Wishkin v. Potter*, 476 F.3d 180, 185 (3d Cir.2007) (the prima facie test must be "tailored to fit the specific context in which it is applied" (quoting *Sarullo*, 352 F.3d at 797–98) (internal quotation marks omitted)); *Weldon v. Kraft, Inc.*, 896 F.2d 793, 798 (3d Cir.1990) ("The framework set forth in *McDonnell Douglas*, which begins with proof of a prima facie case, was 'never intended to be rigid, mechanized, or ritualistic.' " (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978))). The Third Circuit has stated that to establish a prima facie case, it is sufficient for a plaintiff to adduce evidence that "establishes a causal nexus between the harm suffered and the plaintiff's membership in a protected class, from which a juror could infer, in light of common experience, that the defendant acted with discriminatory intent." *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 275 (3d Cir.2010) (discussing prima facie case in § 1981 context); *Sarullo*, 352 F.3d at 798 (plaintiff "must establish some causal nexus between his membership in a protected class" and the adverse employment decision to establish a prima facie case of discrimination in Title VII case).

Also, "the burden to establish a prima facie case is not an onerous one." *Young v. St. James Management, LLC*, 749 F.Supp. 2d 281, 288 (E.D. Pa. 2010). The elements are dependent on the facts of the specific case. *Id.* (citation omitted).

Additionally, in *Bates v. MHM Correctional Services*, 2008 WL 396225, *8 (M.D. Pa.), *aff'd* 321 Fed. Appx. 217, 2009 WL 984787 (3d Cir. 2009), the Court stated:

> In order to withstand a summary judgment motion, a plaintiff suing for employment discrimination under Title VII must establish that the plaintiff's protected trait "played a role in the employer's decision making process and had a determinative influence on the outcome of that process." *Monaco v. American Gen. Assurance Co.*, 359 F.3d 296, 300 (3d Cir.2004). FN10 A plaintiff may meet this burden with either direct evidence sufficient to satisfy the requirements of Justice O'Connor's concurring opinion in *Price Waterhouse v. Hopkins*, 490 U.S. 288 (1989) or with indirect evidence sufficient to satisfy the three-step burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

The *Bates* Court further stated:

> Under *McDonnell Douglas*, the plaintiff must first make a *prima facie* showing of discrimination. *Pivirotto v. Innovative Systems, Inc.*, 191 F.3d

344, 352 n. 4 (3d Cir.1999). A plaintiff can establish a prima facie case by showing that: (1) she is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment despite her qualifications; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position. *Sarullo v. United States Postal Service,* 352 F.3d 789, 797 (3d Cir.2003) (citations omitted). If the plaintiff cannot establish these elements, the defendant is entitled to judgment as a matter of law. *Pivirotto,* 191 F.3d at 352 n. 4.

When the plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant and requires that it produce some evidence of a legitimate, nondiscriminatory reason for the adverse employment action. *Id.*

"If the plaintiff succeeds, the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its actions. The defendant's burden at this stage is relatively light: it is satisfied if the defendant articulates any legitimate reason for the discharge; the defendant need not prove that the articulated reason actually motivated the discharge." *Woodson v. Scott Paper Co.,* 109 F.3d 913, 920 n. 2 (3d Cir.1997) (internal quotation marks and citations omitted).

*Id.* at *8-*9.

As discussed below, we find that Plaintiff has failed to establish a prima facie case with respect to his Title VII race discrimination claim.

Additionally, Plaintiff raises a claim of Retaliatory Firing for Opposing Discrimination under Title VII. In Count IV of his Complaint, Plaintiff alleged that he filed an EEOC Charge against Defendant in 2009 regarding complaints of discrimination in the workplace. (Doc. 1, ¶'s 39-40). In *Slater v. Susquehanna County,* 631 F.Supp. 2d 653, 662 (M.D. Pa. 2009) the Court stated:

Section 704(a) of Title VII provides:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... or for a labor organization to discriminate against any member thereof or applicant for

14

membership, because he has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title.

Further, Plaintiff raises a claim under the ADA. The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). *See Hohider v. United Parcel Service, Inc.*, 574 F.3d 169, 186, 191 (3d Cir. 2009)("Tile I of the ADA prohibits covered employers from discriminating against qualified individuals with disabilities because of their disabilities, a prohibition that includes failing to reasonably accommodate such individuals.").

To establish a prima facie discrimination case under the ADA, a plaintiff must prove:

(1) that he or she has a disability within the meaning of the ADA; (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he or she has suffered an otherwise adverse employment decision as a result of discrimination.

*Jamison v. Campbell Chain Cooper Tools*, 2009 WL 4429733, at *3 (M.D. Pa. Nov. 27, 2009) (internal quotation marks omitted) (quoting *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 761 (3d Cir. 2004)); *Reilly v. Lehigh Valley Hosp.*, 2012 WL 895459, *4 (E.D. Pa. March 15, 2012) (citations omitted).

A Plaintiff can establish a disability in one of three ways. *Jamison*, 2009 WL 4429733, at *4. The Court held in *Jamison*:

Plaintiffs can prove that (1) they have a "physical or mental impairment that substantially limits one or more of the major life activities of such individual;" or (2) they have a "record of such impairment;" or (3) they are "regarded as having such

an impairment." 29 C.F.R. § 1630.2(g); 42 U.S.C. § 12102(1).

2009 WL 4429733, at *4.

The *Jamison* Court continued further:

> To have a record of impairment, plaintiff must either have "a history of" an impairment that substantially limits one or more major life activities or she must have "been misclassified as having" the same. 29 C.F.R. § 1630.2(k). To prove that she was "regarded as having" a disability, plaintiff can show any of the following: (1) she has an "impairment that does not substantially limit major life activities but is treated by [defendant] as constitution such limitation;" (2) she has an "impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment;" or (3) she has no impairment but she is "treated by [defendant] as having a substantially limiting impairment." 29 C.F.R. § 1630.2(*l*); *see also Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 381 (3d Cir. 2002). A plaintiff can make such a showing by demonstrating either that "despite having no impairment at all [defendant] erroneously believed that [plaintiff] had an impairment that substantially limited one or more of her major life activities" or that she "had a non-limiting impairment that [defendant] mistakenly believed substantially limited on or more of her major life activities." *Eshelman v. Agere Sys.*, 554 F.3d 426, 434 (3d Cir. 2009). The court must focus on "the reactions and perceptions of the persons interacting or working" with the plaintiff and not on the plaintiff's "actual abilities." *Kelly v. Drexel Univ.*, 94 F.3d 102, 108-09 (3d Cir. 1996).

2009 WL 4429733, at *4 n.8 (alterations in original).

We find that Plaintiff has failed to establish his claim under the ADA and since there is not evidence that he met the requirements for having a disability as set forth by the Court in *Jamison*. Plaintiff fails to sufficiently show that he is a "qualified individual" under the ADA and, that he has a disability within the meaning of the ADA.

The ADEA provides that:

> "[I]t should be unlawful for an employer to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age." 29 U.S.C. § 623(a)(2).

16

Thus, "the ADEA prohibit[s] employers from discriminating against qualified individuals on the basis of ... age." *Verdecchia v. Douglas A. Prozan, Inc.*, 274 F. Supp. 2d 712, 719 (W.D. Pa 2003); *see also* 29 U.S.C. § 623(a)(1). An employer is defined in the ADEA as follows:

> a person engaged in industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . 29 U.S.C. § 630(b).

29 U.S.C. § 630(b). *Verdecchia*, 274 F. Supp. 2d at 719.

In *Duffy v. Paper Magic Group, Inc.*, 265 F. 3d 163, 167 (3d Cir. 2001), the Third Circuit stated the following elements to establish an ADEA age discrimination claim:

> The ADEA prohibits employers from discriminating against individuals in hiring, discharge, compensation, term, conditions or privileges of employment on the basis of their age. *See* 29 U.S.C. § 623(a)(1). Age discrimination may be established by direct or indirect evidence. *See Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 972 (3d Cir. 1998) When evaluating ADEA discrimination claims based on indirect evidence, a plaintiff may establish a prima facie case of age discrimination under the ADEA by demonstrating that she: (1) was a member of a protected class, i.e., that she was over forty, (2) is qualified for the position, (3) suffered an adverse employment decision, (4) and was ultimately replaced by a person sufficiently younger to permit an inference of age discrimination. *See id.* at 973.

The *Duffy* Court also noted that:

> A prima facie case creates an inference of unlawful discrimination. The burden of production then shifts to the employer who can dispel the inference by articulating a legitimate, nondiscriminatory reason for its actions. *See Connors*, 160 F.3d at 974 n. 2. If the employer meets this burden, the employee must then prove by a preponderance of the evidence that the articulated reasons are a pretext for discrimination. *See id.* Where the employee is unable to establish a prima facie case, however, no inference of discrimination is raised and the employer has no burden to proffer a reason for any action. *Spangle v. Valley Forge Sewer Auth.*,

839 F.2d 171, 174 (3d Cir. 1988).

*Id.*

The ADEA does not allow "age discrimination by employers against employees and applicants for employment." *EEOC v. Zippo Mfg. Co.*, 713 F. 2d 32, 35 (3d Cir. 1983) (citations omitted). Further, this Court has held that the Plaintiff must allege an actual or *de facto* employment relationship with a Defendant as a requisite to an age discrimination claim under the ADEA. *See Tyrrell v. City of Scranton*, 134 F. Supp. 2d 373, 380 (M.D. Pa. 2001). Here, Plaintiff was undisputedly an employee of Defendant MinSec. (Doc. 17, SMF, p. 2).

We find that Plaintiff had failed to establish a prima facie case of age discrimination under the ADEA, as discussed below.

In *Cupps v. Pittsburgh Care Partnership Inc.*, 2011 WL 284468, *3 (W.D. Pa. Jan. 26, 2011), the Court stated "employers are prohibited from discharging or otherwise discriminating against employees who take FMLA leave."(citing 29 U.S.C. §2615(a)(2)). The *Cupps* Court, 2011 WL 284468, *3, also stated that:

> The [FMLA] contains two relatively distinct types of provisions: a series of prescriptive substantive rights for eligible employees, often referred to as the "entitlement" or "interference" provisions which set floors for employer conduct, 29 U.S.C. §§ 2612, 2614(a)(1); and protection against discrimination based on the exercise of these rights, often referred to as the "discrimination" or "retaliation" provisions, 29 U.S.C. § 2615(a)(1–2); 29 C.F.R. § 825.220(c). *Callison v. City of Phila.*, 430 F.3d 117, 119 (3d Cir.2005). An employee may bring suit to enforce these rights pursuant to section 2617(a) of the Act. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 141 (3d Cir.2004).

We agree with Defendant (Doc. 16, p. 5) that our Plaintiff's Title VII, ADA and ADEA claims fail since Plaintiff has not shown that he was discriminated against by Defendant due to his race,

age or any disability and, since Plaintiff has not offered any evidence to raise an inference of unlawful discriminatory treatment by Defendant. Defendant states that "Plaintiff has adduced no record evidence in support of the prima facie elements of any of his claims and the time for discovery has closed." (*Id.*). Defendant cites to its undisputed SMF which are detailed above. We find that Defendant's SMF show that Plaintiff has failed to establish the prima facie elements of his employment discrimination claims. Defendant also notes that "Plaintiff's non-Title VII discrimination claims [*i.e.*, Plaintiff's ADA, ADEA and FMLA claims] are analyzed under the same burden shifting framework that applies to Plaintiff's Title VII claims." (*Id.*, p. 5 n 1). We again agree with Defendant.

In *Hohider v. United Parcel Service, Inc.*, 574 F.3d at 191-92, the Third Circuit stated as follows:

> As under Title VII, inquiry into whether a plaintiff alleging disability discrimination under the ADA is qualified for the employment in question may be relevant to assessing whether that plaintiff has offered evidence sufficient to give rise to an inference that the employer discriminated against him on the basis of a statutorily protected characteristic. *See, e.g., Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 667-68 (3d Cir.1999) ("The *McDonnell Douglas* Title VII burden shifting rules apply to claims of discriminatory treatment under the ADA."); *Matczak v. Frankford Candy & Chocolate Co.*, 136 F.3d 933, 938 (3d Cir.1997); *see also Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 n. 3, 124 S.Ct. 513, 157 L.Ed.2d 357 (2003). Unlike Title VII, however, the ADA explicitly incorporates this inquiry into its definition of prohibited discrimination, and thus generally requires evaluation of whether a disabled individual is "qualified" as defined under the statute to determine not only whether discrimination on the basis of disability has occurred, but more fundamentally, whether such discrimination against that individual is unlawful.

*See also Datto v. Harrison*, 664 F.Supp.2d 472, 488 (E.D. Pa. 2009)(citing *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 157 (3d Cir. 1995)("noting that 'the ADA, ADEA, and Title VII all serve the same purpose- to prohibit discrimination in employment against members of certain

19

classes [, and] ... the methods and manner of proof under one statute should inform the standards under the others as well.'")(other citation omitted); *Cupps v. Pittsburgh Care Partnership Inc.*, 2011 WL 284468, *3 (W.D. Pa. Jan. 26, 2011)("An FMLA retaliation claim is subject to the burden-shifting framework applied to other discrimination claims (under Title VII, the ADEA and the ADA), as set forth in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973))(citing *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 146-47 (3d Cir. 2004)).

      Defendant argues that Plaintiff has failed to produce any evidence in support of his employment discrimination and retaliation claims, Counts I-V of his Complaint, and that the undisputed record shows that Defendant terminated Plaintiff for repeatedly violating its workplace policies and procedures, and the last chance agreement reached with Plaintiff. Thus, Defendant states that is it entitled to judgment as a matter of law with respect to all of Plaintiff's claims. We agree with Defendant as fully explained above. Indeed, we find no evidence submitted to support any of Plaintiff's employment discrimination claims against Defendant. To the extent Plaintiff (Doc. 20) alleges that Defendant's evidence, including the Affidavits of Nesbitt and Nader, is "fraudulent" and contains "perjury" and, that there was never a "last chance agreement" offered to him, we accept the Affidavits of Nesbitt and Nader as well as the "last chance agreement" as undisputed. (Doc. 17, pp. 7-10 & p. 14 & pp. 16-19). Defendant also offered into evidence a copy of its "Standards of Conduct - Code of Ethics" and Nader averred that all of Defendant's employees were given this document. (Doc. 17, p. 17 & pp. 27-31). We also disagree with Plaintiff that the evidence of Defendant which covers his entire period of employment with it is not relevant, and that his case only covers the year 2010. Plaintiff was an employee of Defendant MinSec

Companies from 2003 through October 19, 2010, and as such, we find all Defendant's evidence relevant in this case. Defendant's undisputed evidence shows that Plaintiff repeatedly violated MinSec's workplace policies and procedures, and that this was the sole reason for Plaintiff's termination. Thus, we find that the evidence submitted by Defendant supports the conclusion of Nader in her Affidavit that "during the time that the Plaintiff was employed by MinSec as a Security Monitor, he was repeatedly late for work, he repeatedly violated MinSec's workplace policies and procedures, and his supervisors repeatedly cited him for below standard performance." (Doc. 17, pp. 18-19).

Defendant also argues that even if Plaintiff did offer evidence to show intentional discrimination, and we agree with Defendant that Plaintiff did not offer any such evidence, it would still be entitled to summary judgment since its undisputed evidence shows Plaintiff was terminated only for repeatedly violating its policies and procedures, and for violating the October 9, 2010 last chance agreement by failing to secure facility keys. (Doc. 17, p. 25). As thoroughly discussed above, we find that the undisputed evidence shows Plaintiff was terminated by Defendant solely for repeatedly violating its policies and procedures, and for violating the October 9, 2010 last chance agreement.

Finally, with respect to Plaintiff's Title VII retaliation claim, Defendant states that its evidence shows Plaintiff was terminated for failure to follow its policies and procedures, and that Plaintiff did not submit any evidence to show a nexus between his October 2010 termination by Defendant and his alleged, unspecified 2009 EEOC Charge. We find that Plaintiff has offered no evidence to show a causal link between his alleged 2009 EEOC Charge and his October 2010 termination by

21

Defendant. As stated, the time for discovery in this case has ended and Plaintiff has failed to offer any evidence to establish his employment discrimination claims and retaliation claim.

Based on the above, we shall recommend that Defendant's Summary Judgment Motion (Doc. 16) be granted with respect to all of Plaintiff's federal employment discrimination and retaliation claims raised in his Complaint, Counts I-V.

## V. Recommendation.

Based on the above, it is respectfully recommended that the Defendant's Motion for Summary Judgment (**Doc. 15**) be granted with respect to all of Plaintiff's federal employment discrimination and retaliation claims, Counts I-V, raised in his Complaint against Defendant. It is also recommend that the Court enter Judgment in favor of Defendant and against Plaintiff, and close this case.

**THOMAS M. BLEWITT**
**United States Magistrate Judge**

Dated: April 19 , 2013

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANTONIO GEATTI,      :    CIVIL ACTION NO. **3:CV-12-0032**

           :

   Plaintiff       :

           :    (Judge Mannion)

   v.         :

           :    (Magistrate Judge Blewitt)

MINSEC COMPANIES,     :

           :

   Defendant     :

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

Report and Recommendation dated April /9, 2013.

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the
> magistrate judge, making his or her own determination on the basis

of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely Objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

Dated: April 19, 2013